This appeal focuses primarily on the distinction between the burden and standard of proving a fact as opposed to the materiality of that fact itself. The fact we're talking about is possession of a firearm in connection with a drug offense. In this case it was conspiracy to distribute methamphetamine. The government is taking the position, relying on Restrepo, that because it does not have to show a connection, that in fact there need be no connection. I think as the recent case of United States v. Ferryman, and this is a case I submitted by way of supplemental authority, makes it clear that a connection with the offense is always required. It's a question of the burdens of proof. In the case of a departure based on safety valve, the defendant has the burden of proving an absence of a connection by a preponderance of the evidence. Under 2D1.1b, where we're referring to, the defendant has the burden of proving the absence of a connection by clear improbability. In this case, Your Honor, the facts themselves are not in dispute. We're all talking about the same facts. The government, in fact, has conceded there's no evidence that the possession of the firearms was in furtherance of the drug conspiracy. Because these were separately negotiated transactions that occurred at the same time purely by the dictation of the government. They ordered up guns. They ordered up drugs. Sometimes they ordered them up at the same time. And that's when they were delivered at the same time. And that's when the possession was at the same time. But as I understand your theory, that these guys who are engaged in parallel businesses, if you will, they'll deal drugs or they'll deal guns or they'll deal both. Why isn't it then quite foreseeable that when they've got a buyer who's looking for both, that you're going to have the convergence of both guns and drugs and the whole concern about having guns associated in the context of a drug transaction is that they're likely to be used or there's a danger of their being used. We have to put this in context. These are people engaged in drugs and guns. My client, a homeless person, is approached by an informant. Does he know where to get a gun? He goes to get a gun. So that's your first transaction. During that transaction, my client takes out a small amount of methamphetamine for personal use. And the informant says, well, how much did you pay for it? Seventy-five dollars. I'll give you a hundred dollars. Okay. Drugs are never mentioned for eight months. During that time, the undercover agents are talking with the co-defendant about guns. And there was no evidence that he was in the business of guns, but he could go out and get them. You mean who? The co-defendant. In one case, he's trying to get a residence in Arizona so he can go to Arizona and buy them in the dealers over there legitimately as a local resident and then sell. Now that's illegal, yes. But these are brokers, Your Honor. Eight months later, they bring up the drugs. Drugs, do you know where you can get them? Well, I use it personally, the co-defendant says, but I'll check my source. And he said, well, my source can get more. You can always go to a user who's getting it from somebody and maybe he could get more. So now he's in the business of drugs. First, he sells a gun and now he's in the business of guns and now he's in the business of drugs. And then they start ordering a lot at the same time. At a certain point in time, you say, what's the connection between the two? It's the agent's dictate. That is, they're going to order them at the same time? If there's such a big concern, this policy concern about guns and drugs, don't order them at the same time. There was purely their dictates that created the... You're saying that don't order them at the same time if they've got a willing, ready and willing seller. The fact that they're willing to put them together is part of the danger that the policy is directed against. Well, these sellers don't have guns, Your Honor. These sellers are brokers. So if you tell them to go out and get some guns, they'll go out and try to get them to your order. But they don't have them. Well, but they bring them to the party. They bring them to the transaction. I think it's a pretty good ones, too, like silencers and things along those lines. Your Honor, the agents had very specific wants, and these individuals, that is the co-defendant, was able to find them to satisfy them. You're not arguing entrapment, are you? Well, that is a second part, a sentencing entrapment argument, that the convergence of these elements, that is the enhancement of the guns and the drugs, was purely a creation of the agents. That is the second point. But I believe the strongest point, Your Honor, is they were not connected to each other. They were just commodities being sold at the same time because the agents ordered them at the same time. So if they had brought them, brought all these guns, but carried one on his hip, then there would be no problem. There would be no problem, Your Honor. But it's the fact that your client enters into a transaction where they're both drugs and guns involved, but they're just pure commodities, so it doesn't make any difference. Well, Your Honor, they're pure commodities that are together at the same time purely because the agents ordered them. Well, and for purposes of sale, not for as part of protecting the loot. Yes, Your Honor. And there was no evidence that they were loaded. I'll give an example. It's a little absurd, but I think it proves the point. If I were a Civil War buff and I had an old Civil War cannon, immobile, pointing in one direction, can't be looted, and every year I shot it off with some charge, and I just happened to deal drugs in it, would that firearm be in connection with that drug? No, because it's there. Okay, but he isn't charged with it being in furtherance of the conspiracy. Possession isn't, I mean, the weapon possession reflects an increased danger when drug traffickers possess weapons, and they are, there are discrete elements of each, right? Well, it still has to be connected with the offense. Ferryman makes that clear, that it's just a burden of proof of the defendant that he has to clear, show that it's clearly a problem that's connected, but they still have to be connected as a material fact. And we submit that the evidence, the undisputed evidence of these separately negotiated parallel transactions shows that the weapons were not connected to the drugs. They were on separate courses, separately negotiated price, amount, and delivery times. They were just there at the same time. There at the same time, but not connected in the sense that the drugs furthered the, the guns furthered the drugs. They were just simply there as commodities because the agents ordered them. So they're just dealing in drugs and guns, don't care which one, and just sell them. One doesn't further the other. That's correct, Your Honor. They were brokers. And what they ordered, they didn't have an inventory of guns or drugs. The agents would say, can you get me this? Well, I'll check my source, and then I'll go out and try to do this. So they happened to go out for the specific transaction to make deliveries. But there's no connection between the, they said, well, we won't sell you a gun unless we have a drug, or we can't, we can't sell you drugs without having our guns there. There's no connection, Your Honor. Okay. I'd save the rest of your time for rebuttal. I will, Your Honor. It's kind of a free market argument you're confronting. Yes. May it please the Court, Steve Miller for the United States. The government doesn't dispute that the guns and the drug transactions were not connected. And further, that's a different standard. That's the 924C standard. And what we have in this case is the supermarket. It's the separate commodities, same transactions. So you go to the supermarket, you have someone who offers these commodities, and you go through the checkout, and you have a bag of grapes, a six-pack of soda, your Thompson submachine gun, and an eight-ball of meth. They are related. One does not further the other. But under the guidelines, they don't, the policies, you don't want the guns present during drug deals. The guidelines I think that we're talking about, the Note 3, says, The enhancement for weapon possession reflects the increased danger of violence when drug traffickers possess weapons. The adjustment should be applied if the weapon was present, unless it is clearly improbable that the weapon was connected with the offense. Yes. And that's the offense of conviction, which is the drug dealing. So what's the, you just said they're not connected. That one is not in furtherance of the other. Right. The word is it's not connected. But in the context of the improbability, the unloaded gun in the closet, the display of an antique weapon at the home, if we take it into the illogical conclusion, if you had a crooked police officer who was wearing his uniform, which would have a gun, and he sold or bought drugs, there would be the argument, well, he always carries a gun, it's not. No, no, no, but there's, you know, but there's, you always find it's connected by way of saying, well, you know, it's within reach, there's the chance of, you can, there's an inference that he's wearing the gun to protect against being ripped off in his drug transaction. But here you have a situation where you start off by saying, no, these are totally separate transactions, so they're not in furtherance, and the application note is saying they have to be connected. And they're not connected. They're only connected, as he says, because they're orders for drugs and orders for guns, but they're not bringing it to the party in order, in any sense of the term, as you're saying, to protect the dealers or the brokers from being ripped off by their buyers or whatever. So I'm not following the argument. Well, if it were for the purpose of protecting, being brought to the party for the purposes of protecting against a rip-off, then that would be a 924 standard. But there's the case where a drug dealer engaged in a drug transaction, and he was liable for the upward adjustment because the gun was 15 miles away, because the gun was available during the course of the conspiracy. It's a different standard. But what was the connection? The connection was that he had been dealing drugs. The gun was at his home during the course of the conspiracy, and he was held liable under the upward adjustment for that, even though the gun wasn't. Well, anything's more dangerous if you have a gun. Precisely. Okay. But you're saying that's not quite the standard. So what is it? In the furtherances over here, there are people that can have guns and dope at the same time that would not meet the nexus here. But obviously, anytime you have a gun, there's a possibility of more violence in someone that doesn't have a gun. So where do we fit here? How do we – what's enough? Well, I think that the simultaneous presence of guns and drugs should be enough. That the whole idea is that the probability that someone – But you said there are some instances where it wouldn't be. Yeah, and that still justifies the upward adjustment. But, as I said, the main policy and purpose of it is to avoid the presence of a gun during an inherently dangerous action, which is dealing drugs, and the probability that someone – Can I just understand how you're – so I make sure I don't have to go back and listen to the tape. You started out by saying the government does not contend that the gun was present in furtherance of the drug sale or in connection with the drug sale. Is that correct? Yes, and the connection I meant in furtherance, I meant addressing the 924C standard. Okay, so then what you're saying is the application note which says you have to – where it says unless it's clearly improbable that the weapon was connected with the offense, and the offense in this case is the offense of drug sale, right? Yes. Okay, so what's – maybe we're getting caught up in semantics here, but I don't understand. Now we're going off into what seems intuitively correct, that the presence of drugs and guns in the same location is inherently dangerous, but that's not what the application note is talking about. Well, I think that that's – It says connected to the offense. So what was the connection to the offense? Mere presence? Yes. You're saying the application note use of the word connection means it was present then? Yes. And do you have any authority for that? And the – well, it's the context. None of the case. Any case authority that's interpreted it that way? The only one would be the one that would have the restrepo and the one involving the transaction with the gun 15 miles away. But you also need to view that application note in the context of the balance of that note and commentary, which is we recognize the inherent danger when the guns are present. But here's the problem with that. In this particular case, the gun's the only present because the cops ordered them. Right? Yes. And that's because they were involved with people who were selling guns and dope. Now, contrary to some of the representations during oral argument here, it wasn't always that the agents got in contact with someone who was dealing guns and say, hey, let's do some dope. On November 6th, 01, they bought a .357 Magnum. And at that time, Mr. Allred had some methamphetamine, and they bought that, one gram of 96 percent pure from Mr. Allred. But after a while, they had the contact on July 31st where the agents were to pay Mr. Kirby $1,500 for the balance of a prior firearms transaction. And at that time, he then engaged them. He showed them a methamphetamine pipe and said, I can sell you ice for $7,000 a pound. There's further discussions on August 1st for one half ounce for $500. And August 8th, 2002, discussions for one quarter pound of glass, which is the same thing as ice, I think, for $3,800 a pound. So this characterization of we're only getting into the drugs simultaneously with the firearms transaction because the government is pressing it, that's just not true. If an undercover agent is confronted with someone that's saying, hey, here's your gun. Thank you for paying me for your other gun transaction. Hey, let's discuss drugs. It's the supermarket, free market example that they can then bring up those transactions as well. The weapons were never used in any sense to promote a drug transaction, were they? No. They weren't used to protect the drugs. No, they were not. They're only being sold. Yes. And obviously, you have the one case where if someone were to exchange a firearm in exchange for the drugs, that would be 924C. In good faith, we couldn't say that the simultaneous exchange of guns and drugs to the same individual would be in furtherance of the other, but the danger is still there. Well, what about the example in the application note that says, for example, the enhancement would not be applied to if the defendant arrested for a drug offense or whatever offense, had an unloaded hunting rifle in the closet. Not 15 miles away. This is the application note. Now, were these guns loaded? Some were. There was a transfer of a gun with ammunition. But that is also the context of the commentary note, that when you say in connection, and then you have the rest of the context saying, for example, the unloaded firearm in the closet. Now, when we take a look at this particular case, we're not talking about some gun used for plinking tin cans on the weekend. We're talking about a fully automatic Uzi, a silencer, two guns. No, I understand, but you were saying there's the inherent danger of proximity of weapons in association with any crime. And a hunting rifle may be only used for plinking, but you don't know that. A .30-0 in the shotgun in the closet, if you're a police officer, you know, undercover in that residence, the fact that the guy may also use it for hunting is still proximate is the fact that it's unloaded and it's not in connection with the particular drug sale. It's there. They're assuming a different purpose. Is that what you're saying in the application note? Yes, in the application note, if it's clearly improbable, the unloaded hunting rifle or plinking gun in the closet or the Civil War rifle. It's clearly improbable that it was in connection with the drug sale, in connection with, in furtherance of, and you're saying, well, these weren't that. But if you take it in the context of the circumstances in this case, where we're not talking about the hunting rifle elsewhere, it's classified weapons. I'm still trying to get my mind around not your statement that the government agrees that the guns were not in furtherance of the drug transaction, but then you're trying to draw a distinction between that and, what did you say? It's mere presence, is it not? Well, I'll have to puzzle that through. Well, the commentary says the enhancement for the weapons possession reflects the increased danger of violence when drug traffickers possess weapons. And when we take it in the context that they are turning over— No, I understand what the facts are. Yes, but to people that they think are drug dealers. But isn't that context supposed to be that they're possessing weapons to further their drug trafficking? That would be the 924C. Otherwise, the guidelines would be superfluous. I note that I'm two and a half minutes over. If I may summarize, I don't believe that the court erred in assessing the upward adjustment for the firearms enhancement. But as a final note, in this case, the defendant contested that, received a sentence of 130 months, appealed it, and it was reversed. The mandate to the judge, to Judge Jones, was examine this case and see if you would give something lower or something else. That was because Ameline had just come out, if my memory is correct. I can't remember the case. Yes. About a year and a half ago. We are 11 days short of the Halloween anniversary of the resentencing. So that's symbolic in some sense, I guess. I don't know how. Okay. Ameline remands weren't for anything other than to make sure that the district court knew it had discretion as opposed to being bound. Precisely. But in this case, the court could have evaluated whether or not it was reasonable and then done a minute order. In this case, he resentenced the defendant. I think your point is he keeps going back and he's going to get the same no matter what. Yes. Is that what you're saying? Correct. Still got a legal point here. Okay. Oh, I'm sorry. You do have some time. Yes, you're right. One, the first drug transaction, again, was my client was going to use some personal use methamphetamine. The informant said, I'll give you $25 more and you pay for it. There was ammunition, but that was sold separately. There was no evidence that any of the weapons were loaded. They were ordered. The ammunition was ordered. It was delivered at the same time as the weapons. There was no connection and there has to be a connection. Okay. Thank you. I appreciate the argument. And whatever the relationship to Halloween, we are over and you have the benefit of being the last case on calendar. We enjoyed the argument. Well, thank you. Thank you very much. All rise. This court from this session stands adjourned. Oh, I'm sorry. Before we go off the record, we have a second page. You don't have to stay, but I need to do this for the record. The cases of United States versus Magflor, that case is submitted on the briefs. The case of Odelier Banda versus Gonzalez has been taken off calendar. The panel retains jurisdiction and will be set for argument at another time. We're resetting that at the request of counsel. At the request of counsel. Cain versus Gonzalez is submitted on the briefs. And Syed versus Gonzalez is also submitted on the briefs. And that concludes our time.
judges: Fisher, Callahan, Collins